# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

## CASE NO. 11-20792-CR-ALTONAGA

**UNITED STATES OF AMERICA**,

      Plaintiff,

vs.

**JOHN PHILIP STIRLING**, *et al.*,

      Defendants.

_____/

## ORDER ON DEFENDANTS'
## <u>MOTION TO DISMISS THE INDICTMENT</u>

**THIS CAUSE** is before the Court on Defendant, John Philip Stirling's ("Stirling['s]")
Motion to Dismiss the Indictment Based on Lack of Personal Jurisdiction [ECF No. 95], filed on
February 13, 2012.[1] Defendants Thomas Arthur Henderson and Jose Manuel Calvo Herrera join
in the Motion [ECF Nos. 96, 98, 101, 102].[2] The crux of Defendants' Motion is that, because the
Government has not established a "nexus" between Defendants' alleged criminal activities and
the United States, the exercise of jurisdiction in this case violates the Due Process Clause of the
Fifth Amendment. Defendants also argue that the Indictment must be dismissed by reason of the
Government's "unreasonable delay" in bringing Defendants before a United States magistrate
judge for their initial appearance. The Court has carefully reviewed the parties' submissions and
the applicable law. For the reasons that follow, Defendants' Motion is DENIED.

---

[1] Although styled as a Motion to Dismiss for Lack of *Personal* Jurisdiction, Stirling indicates in
his Reply [ECF No. 112] that his Motion is in fact based upon an alleged lack of subject matter
jurisdiction.

[2] The term "Defendants" as used herein refers to Stirling and the two Defendants who joined in
the Motion.

## I.     BACKGROUND

**A.**     **Defendants' Arrest and Transport to the United States**

On October 17, 2011, the United States Coast Guard cutter *Confidence*, while patrolling international waters approximately 165 nautical miles south east of Jamaica, observed a vessel named *Atlantis V*, which the Coast Guard suspected was engaged in illegal drug trafficking. The vessel bore a Canadian registration number. In accordance with U.S. and international law, the Coast Guard contacted Canadian officials to request authorization to board and search the vessel. The Canadian government gave its consent on October 18, 2011, whereupon the Coast Guard searched the *Atlantis V* and recovered approximately 380 kilograms of cocaine, as well as small quantities of heroin and cocaine base. The Coast Guard then requested the Canadian government's consent to enforce U.S. law over the *Atlantis V* and its crew, including Defendants, none of whom are United States nationals. [3]

While awaiting Canada's consent, maritime traffic and mechanical problems aboard the *Atlantis V* required that the vessel be towed to the nearest port — the U.S. naval station at Guantanamo Bay — which is located approximately 600 nautical miles from Miami, Florida. Once there, the *Atlantis V*, its cargo, and Defendants were transferred to the United States Coast Guard cutter *Tahoma*, which took position in waters north of the naval station until the Canadian government consented to enforcement of U.S. law on October 24, 2011. The *Tahoma* arrived in

---

[3] The certifications submitted by the Government in opposition to Defendants' Motion are in conflict as to the date that the Coast Guard sought the Canadian government's consent. The certification of Commander Daniel Deptula, attached as an exhibit to the Government's Response to the Motion [ECF No. 106], indicates that Canada's consent was first sought on October 22, 2011. The certification of W.L. Carmichael, attached as an exhibit to the Government's Surreply [ECF No. 117], indicates that Canada's consent was first sought on October 19, 2011. This discrepancy does not affect the Court's decision.

Miami, Florida on October 27, 2011. Defendants were appointed counsel and made their first appearance before a United States magistrate judge the next day, October 28, 2011.

On November 10, 2011, a federal grand jury returned a two-count Indictment charging Defendants with violations of the Maritime Drug Law Enforcement Act, 46 U.S.C. §§ 70501-70508 (2006) (the "MDLEA"). Specifically, Defendants are charged with conspiracy to possess with the intent to distribute five or more kilograms of cocaine, one or more kilograms of heroin, and 280 or more grams of cocaine base while on board a vessel subject to the jurisdiction of the Untied States, in violation of 46 U.S.C. section 70506(a) and 21 U.S.C. section 960(b)(1)(A)-(C) (Count 1); and with possession with intent to distribute five or more kilograms of cocaine, one or more kilograms of heroin, and 280 grams or more grams of cocaine base while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. section 70503(a) and 21 U.S.C. section 960(b)(1)(A)-(C) (Count 2).[4] Defendants entered pleas of not guilty to these charges.

**B. Defendants' Motion to Dismiss the Indictment**

Defendants assert that because the Government has not established a "nexus" between their alleged conduct and the United States, the Court lacks subject matter jurisdiction to prosecute them for violations of the MDLEA. Alternatively, Defendants argue that the Indictment should be dismissed due to the "unreasonable delay" between their interdiction and initial appearance before a federal magistrate judge.

---

[4] Sections 70503 and 70506 of Title 46, United States Code, incorporate by reference the penalty framework of section 960, Title 21, United States Code.

On the jurisdictional question, Defendants argue that to be prosecuted extraterritorially under the MDLEA, the Government must prove a "nexus" between the alleged criminal activity and the United States. Defendants concede that such a nexus is not required under the language of the statute. They contend, however, that a nexus requirement is nonetheless imposed in this case by the Due Process Clause of the Fifth Amendment.[5] According to Defendants, the Due Process Clause bars the exercise of jurisdiction under the MDLEA where, as here: (1) the Defendants are not U.S. nationals; (2) the Defendants were not present in the United States at the time of the alleged offenses; (3) the Defendants were not engaged in business in the United States; (4) the seized narcotics were found aboard a foreign-registered vessel; and (5) the Government does not allege that the vessel or the seized narcotics were bound for the United States. The Government responds that, regardless of Defendants' contacts with the United States, or lack thereof, if the MDLEA's statutory requirements are satisfied (*i.e.*, the vessel's flag nation consented to the enforcement of U.S. law by U.S. authorities), due process will not act as a bar to the Court's exercise of extraterritorial jurisdiction.

On the second issue, Defendants argue that by routing them through Guantanamo Bay, Cuba, and then holding them at sea for five days before transporting them to the United States, the Government violated Rule 5(a)(1)(B) of the Federal Rules of Criminal Procedure, which provides that, "[a] person making an arrest outside the United States must take the defendant without unnecessary delay before a magistrate judge, unless a statute provides otherwise." The

---

[5] Defendants acknowledge that the Eleventh Circuit has consistently rejected facial challenges to the MDLEA on due process grounds. *See, e.g.*, *United States v. Estupinan*, 453 F.3d 1336, 1338-39 (11th Cir. 2006). Accordingly, Defendants emphasize that their challenge to the Court's subject matter jurisdiction is on an as-applied basis only.

Government responds that such delays were necessary and reasonable, and, in any event, do not warrant dismissal of the Indictment. These issues are addressed below in turn.

## II.   ANALYSIS

### A.  The Court's Jurisdiction to Prosecute Defendants

#### *1.  Subject Matter Jurisdiction Under the MDLEA*

The Court's authority to proceed in this prosecution derives from the MDLEA, which criminalizes drug trafficking on the high seas.[6]  46 U.S.C. § 70503(a)(1).  In enacting the MDLEA, Congress sought to address the "serious international problem" of drug trafficking aboard vessels, which it found "presents a specific threat to the security and societal well-being of the United States."  *Estupinan*, 453 F.3d at 1338 (quoting *United States v. Rendon*, 354 F.3d 1320, 1325 n.2 (11th Cir. 2003)).  To this end, Congress provided that the MDLEA shall apply to all cases where the alleged trafficking occurred on board a "vessel subject to the jurisdiction of the United States" — "even though the act is committed outside the territorial jurisdiction of the Untied States."  46 U.S.C. § 70503(a)-(b).

The Eleventh Circuit has interpreted the language "vessel subject to the jurisdiction of the United States" as a congressionally-imposed limitation on the courts' subject matter jurisdiction, akin to the amount-in-controversy requirement of 28 U.S.C. section 1332.  *United States v. De La Garza*, 516 F.3d 1266, 1271 (11th Cir. 2008).  Accordingly, before a court may exercise its adjudicatory authority under the MDLEA, the Government must first establish that the vessel,

---

[6] The MDLEA also criminalizes conspiracy to engage in drug trafficking on the high seas.  *See* 46 U.S.C. § 70506(b).  For convenience, only section 70503 is referenced in this Order, although the Court's analysis applies equally to both sections.

when apprehended, was either: (1) without nationality (*i.e.*, a "stateless vessel"); (2) assimilated to a vessel without nationality; (3) registered in a foreign nation if that nation has consented or waived objection to the enforcement of U.S. law aboard the vessel; (4) in the customs waters of the United States; (5) in the territorial waters of a foreign nation if that nation consents to the enforcement of U.S. law by U.S. authorities; or, in certain circumstances, (6) a vessel in the contiguous zone of the United States. 46 U.S.C. § 70502(c).

In this case, because the *Atlantis V* is a foreign-registered vessel, the Government relies on Canada's consent to the enforcement of U.S. laws as grounds for the Court's exercise of jurisdiction. The MDLEA provides that "[c]onsent or waiver of objection by a foreign nation to the enforcement of the United States law by the United States . . . is proved conclusively by certification of the Secretary of State or the Secretary's designee." 46 U.S.C. § 70502(c)(2)(B). The Government has therefore attached to its Response to Defendants' Motion to Dismiss a sworn certification from Coast Guard Commander Daniel Deptula, as designee to the Secretary of State, wherein Deptula declares that, "On October 24, 2011, the Government of Canada notified the Government of the United States that it did not object to the United States' exercise of jurisdiction over the Atlantis V (Registration Number 811161), its cargo, and the five crew members, thereby authorizing the enforcement of the United States law." Defendants do not challenge the certification.

The Government has proven conclusively that Canada consented to the enforcement of U.S. laws aboard the *Atlantis V.* The statutory requirements of subject matter jurisdiction imposed by the MDLEA have therefore been satisfied.

## 2. *Due Process*

Nonetheless, Defendants argue that the Court must also determine whether, under the specific facts of this case, the exercise of extraterritorial jurisdiction pursuant the MDLEA would violate their due process rights. Specifically, Defendants urge the Court to adopt the reasoning of the Second and Ninth Circuits, which have held that in addition to the MDLEA's "statutory jurisdiction" requirements, due process requires the Government to prove a "nexus" between the alleged criminal acts and the United States — much like the "minimum contacts" test in the personal jurisdiction context. *See United States v. Perlaza*, 439 F.3d 1149, 1168 (9th Cir. 2006) ("The nexus requirement is a judicial gloss applied to ensure that a defendant is not improperly haled before a court for trial . . . .") (internal quotation marks and citations omitted);[7] *United States v. Yousef*, 327 F.3d 56, 111 (2d Cir. 2003) ("[I]n order to apply extraterritorially a federal criminal statute to a defendant consistently with due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair.") (internal quotation marks and citation omitted). Under this standard, Defendants argue the Court may not proceed where, as here, the Government has not alleged that Defendants have lived, resided, or conducted business in the United States, or that the drugs seized from the Defendants' vessel were ultimately bound for the United States.

The Eleventh Circuit, however, together with the First, Third, and Fifth Circuits, has consistently "refused to read a jurisdictional nexus requirement into the [MDLEA]." *United*

---

[7] The Ninth Circuit does not require the Government to prove a nexus in cases involving stateless vessels, reasoning that, "[b]ecause stateless vessels do not fall within the veil of another sovereign's territorial protection, all nations can treat them as their own territory and subject them to their laws." *United States v. Caicedo*, 47 F.3d 370, 373 (9th Cir. 1995).

*States v. Saac*, 632 F.3d 1203, 1210 (11th Cir. 2011) (rejecting a constitutional challenge to the Drug Trafficking Vessel Interdiction Act, explaining that, as with the MDLEA, Congress acted within its constitutional authority under the High Seas Clause in passing a statute that punishes conduct without a nexus to the United States). *Accord United States v. Cardales*, 168 F.3d 548, 553 (1st Cir. 1999); *United States v. Perez-Oviedo*, 281 F.3d 400, 403 (3d Cir. 2002); *United States v. Suerte*, 291 F.3d 366, 375 (5th Cir. 2002). Indeed, in *United States v. Brant-Epigmelio*, the Eleventh Circuit recently rejected an as-applied challenge to the MDLEA under circumstances almost identical to those presented here. 429 F. App'x 860 (11th Cir. 2011) (per curiam). Similar to Defendants in this case, Brant-Epigmelio, a foreign national, was arrested in international waters aboard a foreign-registered vessel. After unsuccessfully moving to dismiss the indictment before trial, he argued on appeal that his prosecution violated the Due Process Clause since his offense conduct had no nexus with the United States. *See id.* at 864. The Eleventh Circuit summarily rejected this argument, explaining that it was "foreclosed by our circuit precedent." *Id.* The court added: "[u]nder the prior panel precedent rule, we are bound to follow a prior binding precedent unless it is overruled by this court en banc or the Supreme Court." *Id.* (parenthetically quoting *United States v. Vega-Castillo*, 540 F.3d 1325, 1326 (11th Cir. 2008)).

Defendants' arguments as to why the same result should not be reached here are unavailing. First, Defendants contend the *Brant-Epigmelio* decision is not controlling, since unpublished Eleventh Circuit opinions are not binding precedent. Be that as it may, such decisions — especially when they speak directly to the issues involved — are highly persuasive

8

authority. *See* 11th Cir. R. 36-2; s*ee also United States v. Manella*, 86 F.3d 201, 204 (11th Cir. 1996). Moreover, *Brant-Epigmelio* turns on several earlier, published opinions of the court that, while not involving stateless vessels, are consistent with its holding. *See, e.g.*, *Rendon*, 354 F.3d at 1325 (collecting cases).

Perhaps recognizing as much, Defendants also suggest that *Brant-Epigmelio* should not control here inasmuch as it improperly relies on *Rendon*, wherein the Eleventh Circuit observed that "this circuit and other circuits have not embellished the MDLEA with a nexus requirement." 354 F.3d at 1325. According to Defendants, *Rendon* is applicable only to cases involving stateless vessels or facial challenges to the MDLEA. Defendants' argument is without merit.

*Rendon* involved a challenge to the constitutionality of the MDLEA, both facially and as applied, on the basis that the Act allowed prosecutions and punishment where "no nexus with the United States was proved." *Id*. at 1324. The Eleventh Circuit rejected Rendon's argument, reasoning that the defendant's vessel, because it was stateless, was "included within the definition of a vessel subject to the jurisdiction of the United States." *Id*. at 1325. The court added: "Congress, under the 'protective principle' of international law, may assert extraterritorial jurisdiction over vessels in the high seas that are engaged in conduct that has a *potentially* adverse effect and is generally recognized as a crime by nations that have reasonably developed legal systems." *Id.* (quoting *United States v. Tinoco*, 304 F.3d 1088, 1108 (11th Cir. 2002)) (emphasis added). In other words, the MDLEA, and likewise due process, does not require an actual or intended effect in the United States. The Government's only burden, insofar as the Court's subject matter jurisdiction is concerned, is to establish that the vessel upon which the

alleged criminal acts occurred is a "vessel subject to the jurisdiction of the United States" under 46 U.S.C. section 70502(c). *See id.*

The fact that *Rendon* involved a stateless vessel, and the instant case involves a foreign-registered vessel, does not make *Rendon* inapplicable. *Rendon* itself relied upon several decisions involving foreign-registered vessels in which the vessel's flag nation consented to enforcement of United States laws. *See Rendon*, 354 F.3d at 1325 (quoting *Perez-Oviedo*, 281 F.3d at 402-03 and *Cardales*, 168 F.3d at 553). Moreover, for jurisdictional purposes, the only difference in cases involving foreign-registered vessels is that, to satisfy the MDLEA's statutory requirements, the flag nation's consent is required. This requirement does not somehow afford defendants charged with trafficking aboard foreign-registered vessels greater due process protections than defendants arrested aboard stateless vessels. To the contrary, as the Eleventh Circuit noted in *United States v. Gonzalez*, "the consent [requirement] is a courtesy to our neighbor states and not a courtesy to drug smugglers. . . . Due process . . . does not require that a person who violates the law of all reasonable nations be excused on the basis that his own nation *might* have requested that he not be prosecuted by a foreign sovereign." 776 F.2d 931, 940 n.14 (11th Cir. 1985) (rejecting a constitutional challenge to the MDLEA's statutory precursor, the Marijuana on the High Seas Act) (emphasis in original).

The Court likewise declines to "embellish the MLDEA with a consent requirement." Because the *Atlantis V* is a "vessel subject to the jurisdiction of the United States" pursuant to 46 U.S.C. section 70502(c), the Court has jurisdiction to proceed with this prosecution.

### B. Delay in Defendants' Initial Appearance

Additionally, Defendants argue that the Indictment should be dismissed based upon the alleged delay between Defendants' interdiction and initial appearance. Pursuant to Federal Rule of Criminal Procedure 5(a)(1)(B), "[a] person making an arrest outside the United States must take the defendant without unnecessary delay before a magistrate judge." The purpose of Rule 5(a) is to "prevent oppressive police interrogations and other 'third-degree' tactics before bringing the accused in front of an officer of the court." *United States v. Purvis*, 768 F.2d 1237, 1238 (11th Cir. 1985) (citing *Mallory v. United States*, 354 U.S. 449, 451-54 (1957)). Therefore, in determining whether there has been a Rule 5(a) violation, the Court must look to the reasons for the delay and whether Defendants were mistreated or improperly interrogated in the process. *See id.* at 1238-39.

Under the circumstances of this case, the delay between Defendants' interdiction and initial appearance was not unreasonable. As noted, since the *Atlantis V* is a Canadian-registered vessel, the MDLEA and international law required that the Coast Guard obtain the Canadian government's consent prior to Defendants' arrest. Canada did not give its consent until October 24, 2011. It was not unreasonable for the Coast Guard, while awaiting Canada's consent, to tow the ailing *Atlantis V* to the nearest U.S. port and, once there, to transfer her cargo and crew to another Coast Guard vessel. The Coast Guard likewise cannot be faulted for taking three days to traverse 600 nautical miles from Guantanamo Bay to Miami given that in *Purvis* the Eleventh Circuit found that it was not unreasonable for the Coast Guard to take five days to transport defendants 350 nautical miles to Key West. *See id.* at 1239. As in *Purvis*, "a large part of the

delay was necessitated by the fact that the arrest was made so far from port on the high seas." *Id*. Defendants have presented no evidence that they were mistreated or improperly interrogated at any point during their detention.

Because the delay in Defendants' initial appearance was not unreasonable, the Court need not address the question of whether dismissal is an appropriate remedy for violations of Rule 5(a).[8] Rule 5(a) does not require dismissal of the Indictment.

### III.    CONCLUSION

Based on the foregoing analysis, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss the Indictment Based Upon Lack of Personal Jurisdiction **[ECF No. 95]** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 10th day of April, 2012.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:  counsel of record

---

[8]    The Court notes, however, that the Eleventh Circuit very recently observed that "[t]he only remedy we have recognized for a violation of Rule 5 is the suppression of evidence obtained as a result of the violation." *United States v. Carruthers*, No. 10-14261, 2012 WL 447412, at *6 (11th Cir. Feb. 14, 2012) (citing *United States v. Mendoza*, 473 F.2d 697, 702 (5th Cir. 1973)).